IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **MATEO LAGUNAS-ANTUNEZ**<br>17 Pantops Street<br>Raleigh, NC 27603<br><br>    Plaintiff,<br>    v.<br><br>**COREY RASHAD GOODE-HAYES**<br>69 Tall Pines Way, Apt. C<br>Newport News, VA 23606<br><br>And<br><br>**U-HAUL INTERNATIONAL INC.**<br>2727 N. Central Avenue<br>Phoenix, AZ 85004<br><br>And<br><br>**U-HAUL CO. OF ARIZONA**<br>2721 N. Central Ave,<br>Phoenix, AZ 85004<br><br>And<br><br>**U-HAUL CO. OF VIRGINIA**<br>2855 Airline Blvd.<br>Portsmouth, VA 23701<br><br>    **Defendants.** | CASE NO.: 2:24-cv-417<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, Mateo Lagunas-Antunez, by and through undersigned counsel, hereby demands judgment against the above-named Defendants, and states as follows by way of complaint:

**PARTIES**

1. Mateo Lagunas-Antunez is a resident of the State of North Carolina, residing at 17 Pantops Street, Raleigh, North Carolina, 27603.

2. At all times relevant hereto, Mateo Lagunas-Antunez, was employed by and working within the scope of his employment for Navarro Roofing of NC Company Limited located at 400 Mohawk Trail, Clayton, North Carolina, 27527.

3. Defendant Corey Rashad Hayes-Goode (hereinafter "Hayes-Goode) is an individual residing in the Commonwealth of Virginia at 69 Tall Pines Way, Apartment C, Newport News, Virginia 23600.

4. At all times relevant hereto defendant Hayes-Goode was the operator of box truck mounted on a 2019 Ford F650 chassis identified by VIN number 1FDNF6CY2KDB92425 (hereinafter the "Subject Box Truck.)

5. Defendant, U-Haul International Inc. is a corporation organized and existing under the laws of the State of Nevada with a principal place of business located at 2727 N. Central Ave, Phoenix Arizona 85004.

6. At all times relevant hereto, defendant U-Haul International Inc. ("U-Haul International") designed manufactured, fabricated and/or assembled and mounted onto a chassis the Subject Box Truck to U-Haul International's own design specification.

7. Defendant, U-Haul Co of Arizona ("U-Haul AZ") is a corporation organized and existing under the laws of the State of Arizona with a principal place of business located at 2721 N. Central Ave, Phoenix Arizona 85004.

8. At all times relevant hereto, defendant U-Haul AZ was the owner and lessor or renter of the Subject Box Truck.

9. Defendant, U-Haul Co of Virginia ("U-Haul VA") is a corporation organized and existing under the laws of the Commonwealth of Virginia with a principal place of business located at 2855 Airline Boulevard, Portsmouth, VA 23701.

10. At all times relevant hereto, defendant U-Haul VA was an entity that leased or rented the Subject Box Truck to defendant Hayes-Goode.

11. Defendants U-Haul VA, U-Haul AZ and U-Haul International shall hereinafter be referred to collectively as "the U-Haul Defendants."

12. The U-Haul Defendants individually and by and through their agents design, manufacture, fabricate, assemble, sell, rent and/or lease box trucks including the Subject Box Truck with the intention that such box trucks will be operated on highways and roadways throughout the United States of America, including on roadways and highways located in the Commonwealth of Virginia.

13. At all times relevant hereto the U-Haul Defendants knew or had reason to know and anticipated that the persons to whom it was renting or leasing its box trucks would not have training on how to safely operate its box trucks on public roadways.

14. At all times relevant hereto the U-Haul Defendants knew that side impacts were a common accident mode for persons involved in motor vehicle accidents while operating U-Haul box trucks.

15. At the time that the Subject Box Truck was manufactured, assembled, sold and/or rented, the U-Haul Defendants knew that various technologies where readily available and relied upon by the driving public to prevent side impact accidents, including, but not limited to, lane keep assist, audible and visual signals to alert drivers of the presence of nearby vehicles traveling

adjacent, and side cameras and sensors, but the U-Haul Defendants chose not to include these essential safety devices on its trucks, including the Subject Box Truck.

16. At the time that the Subject Box Truck was rented or leased to defendant Hayes-Goode, the U-Haul Defendants did not provide any training or instruction relating to the safe operation of box trucks on public roadways, or, in the alternative, permitted its employees, contractors, and/or other entities engaged in the business of renting U-Haul trucks to rent or lease the Subject Box Truck to defendant Hayes-Goode with the knowledge or expectation that it was likely to be operated by individuals with little or no training or experience operating a box truck.

## JURISDICTION AND VENUE

17. Jurisdiction is based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states and the amount in controversy exceeds One Hundred thousand dollars ($100,000.00), exclusive of interest and costs.

18. Venue is proper in this district based on 28 U.S.C. § 1391(a) and Local Rule 3(B)(3) in that the Eastern District of Virginia, Norfolk Division, is where the accident occurred and where defendants are subject to personal jurisdiction.

## FACTS

19. On July 25, 2022, Mateo Lagunas-Antunez was traveling as a passenger in a 2006 GMC Savanna 2500 Van (hereinafter the "Antunez Vehicle") operated by his brother Rigoberto Lagunas-Antunez, that was traveling on Route 58 in Southampton County, Virginia when suddenly and without warning, the Subject Box Truck operated by defendant Hayes-Goode crossed into the lane of travel of the Antunez vehicle, struck the Antunez vehicle and thereby caused the Antunez vehicle to be pushed off of the roadway and onto the median and to flip over in a manner that caused the roof of the Antunez vehicle to crush down onto Mateo Lagunas-

Antunez and other persons in the vehicle.

20. As a result of the forgoing incident, Mateo Lagunas-Antunez sustained severe and permanent physical and mental injuries, including numerous and multiple fractures, multiple lacerations, lesion of the spinal cord, traumatic pneumothorax, acute respiratory failure, traumatic hemmorrage of the cerebrum with loss of consciousness, muscle and nerve damage and permanent paraplegia.

21. As a result of the forgoing incident, Mateo Lagunas-Antunez was a witness to the death of his brother, Rigoberto, and injury to his sister, America, and thereby sustained further mental trauma and injury.

22. As a result of the foregoing incident, Mateo Lagunas-Antunez has undergone medical treatment and surgical procedures for his injuries, has incurred medical bills and will incur additional medical bills in the future for the treatment of his injuries and to meet his daily physical needs.

23. As a result of the foregoing incident, Mateo Lagunas-Antunez is permanently disabled from work, has sustained lost wages and will continue incur additional lost wages in the future and a loss of future earning capacity.

24. As a result of the foregoing incident, Mateo Lagunas-Antunez has endured extreme pain and suffering mental trauma and embarrassment and will continue to experience pain and suffering, mental trauma and embarrassment in the future and is permanently scarred.

25. As a result of the foregoing incident, Mateo Lagunas-Antunez has suffered a loss of life's enjoyment and may suffer further loss of life enjoyment in the future.

26. As a result of the foregoing incident, Mateo Lagunas-Antunez is permanently confined to a wheelchair and is likely to become further disabled in the future.

## COUNT I
## NEGLIGENCE
## <u>MATEO LAGUNAS-ANTUNEZ V. COREY RASHAAD HAYES-GOODE</u>

27. Plaintiff restates and incorporates herein by reference paragraphs 1-26 as though more fully set forth at length herein.

28. The accident was caused by the negligence of defendant Hayes-Goode including, but not limited to, the following:

   a. switching lanes of travel and/or merging into the lane of travel of the Antunez vehicle when it was not safe to do so;

   b. switching or merging lanes without determining if the maneuver could be completed safely and without striking other vehicles;

   c. failing to maintain proper and reasonable control of the Subject Box Truck;

   d. failing to avoid striking other vehicles on the roadway, including the Antunez vehicle;

   e. failing to signal prior to attempting to switch lanes or merge into another lane of travel;

   f. attempting to switch lanes or merge into another lane of travel when he could not visually ascertain whether it was safe to do so;

   g. failing to observe the Antunez vehicle in a timely and reasonable manner in order to avoid striking the Antunez vehicle; and

   h. failing to steer or break the Subject Box Truck to avoid impact with the Antunez vehicle.

29. As a direct and proximate result of the negligence of the defendant Corey Rashaad Hayes-Goode, Mateo Lagunas-Antunez sustained damages as more fully described above.

## COUNT II - NEGLIGENCE
## <u>MATEO LAGUNAS-ANTUNEZ V. U-HAUL INTERNATIONAL INC.</u>

30. Plaintiff restates and incorporates herein by reference paragraphs 1-29 as though more fully set forth at length herein.

31. U-Haul International designed, manufactured, tested, inspected, marked, sold distributed, delivered and otherwise put the Subject Box Truck into the stream of commerce.

32. U-Haul International owed a duty to persons traveling on the roadways to design, manufacturer, and sell the Subject Box Truck in a condition that is safe for use and that eliminates unnecessary risk from the product's use.

33. U-Haul International knew or should have known at the time it designed manufactured and sold or distributed the Subject Box Truck that it was not safe for use and subjected persons traveling on the roadways to risk of injury when drivers of the Subject Box Truck were traveling on the roadway or attempting to switch or merge lanes of travel.

34. U-Haul International knew or should have known at the time it designed manufactured and sold or distributed the Subject Box Truck that it was not safe for use because it lacked necessary visual aids and signaling devices to ensure that the driver of the Subject Box Truck would be notified of the presence or other vehicles traveling parallel to and adjacent to the Subject Box Truck.

35. The injuries sustained by Mateo Lagunas Antunez were caused by and resulted from the negligent, careless and reckless acts and/or omissions of defendant U-Haul International Inc., by and through its agents, servants, representatives, employees and/or subcontractors acting within the course and scope of their employment as follows:

   a. renting or leasing the Subject Box Truck when defendant knew or should have known that the individual renting or leasing the Subject Box Truck did not have a valid

    driver's license and was not authorized or qualified to operate vehicles on public roadways;

b. failing to ask and/or determine whether the individual renting or leasing the Subject Box Truck and/or the intended driver of the Subject Box Truck had a valid drivers license that was suspended or revoked;

c. failing to take steps to determine whether defendant Hayes-Goode was capable of safely operating the Subject Box Truck;

d. failing to train and require its employees, agents and affiliated businesses on necessary precautions to prevent vehicles from being rented to individuals who were not licensed to operate such vehicles;

e. failing to train and require its employees, agents and affiliated businesses on the steps necessary to instruct and assist drivers on the proper adjustment of side mirrors;

f. failing to train and require its employees, agents and affiliated businesses to assist any and all single vehicle operators with side mirror adjustments to allow for maximum visibility;

g. designing, manufacturing and selling or distributing the Subject Box Truck without visual aids to enhance the operator's ability to detect vehicles traveling alongside the Subject Box Truck while traveling on roadways;

h. designing, manufacturing and selling or distributing the Subject Box Truck without visual or audible signals to alert a driver to the presence of other vehicles traveling on the roadway adjacent and in close proximity to the Subject Box Truck;

i. designing, manufacturing and selling or distributing the Subject Box Truck with inadequate lighting such that other drivers on the highway were not sufficiently

notified of an operator's intention to switch or merge lanes when traveling adjacent to the Subject Box Truck;

j.  designing, manufacturing and selling or distributing the Subject Box Truck without any system for alerting driver that the Subject Box Truck was crossing into another lane while traveling on the roadway;

k.  designing, manufacturing and selling or distributing the subject box truck with mirrors that were difficult to operate and difficult to use and that offered no practical or feasible manner for a driver to adjust while traveling on the roadway to allow for a view of the passenger side of the Subject Box Truck;

l.  designing, manufacturing and selling or distributing the Subject Box Truck with mirrors that were insufficient to accommodate a variety of drivers, body types and driving positions to be sure that the sides of the vehicle where fully visible to the driver;

m. failing to provide sufficient warnings and instructions and training to dealers and managers or rental locations on how to safely operate the Subject Box Truck;

n.  failing to provide sufficient warnings, instruction and training to dealers and managers of rental locations on how to operate the side mirrors on the Subject Box Truck;

o.  failing to provide warnings, instructions and training to its dealers to bring to renter's or driver's attention that the Subject Box Truck lacked the usual safety and signaling devices that ordinary drivers typically rely upon in other vehicles to alert the driver when there is another vehicle traveling immediately adjacent in a neighboring lane of travel.

36. As a direct and proximate result of the negligence of the defendant U-Haul International, Mateo Lagunas-Antunez sustained damages as more fully described above.

## COUNT III
## BREACH OF IMPLIED WARRANTY
## MATEO LAGUNAS-ANTUNEZ V. U-HAUL INTERNATIONAL INC.

37. Plaintiff restates and incorporates herein by reference paragraphs 1-36 as though more fully set forth at length.

38. U-Haul International impliedly warranted that the Subject Box Truck was not defective, unreasonably or inherently dangerous, that it was safe and suitable for ordinary and foreseeable use, that it was of merchantable quality, and that it was fit for its intended use and for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold.

39. In using the Subject Box Truck, defendant Hayes-Goode, other drivers on the roadway and various U-Haul dealers and rental locations relied upon Defendant U-Haul International's knowledge, skill and judgment and the implied warranty of merchantability made by the defendant U-Haul International.

40. The Subject Box Truck as designed, manufactured, and sold or distributed by U-Haul International was defective, unreasonably and inherently dangerous, not safe or suitable for use on the roadways, not of merchantable quality, not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold, and did not comply with other implied warranties made by U-Haul International as prescribed by law or as the evidence may establish.

41. As a direct and proximate result of U-Haul International's breaches of implied warranties, the operator of the Subject Box Truck failed to detect and avoid a collision with the

Antunez vehicle and otherwise switched lanes or merged when it was not safe to do so, ultimately resulting in serious and permanent injuries and damages, to Mateo Lagunas-Antunez as detailed above.

**COUNT IV - NEGLIGENCE**
**MATEO LAGUNAS-ANTUNEZ V. U-HAUL CO OF ARIZONA**

42. Plaintiff restates and incorporates herein by reference paragraphs 1-42 as though more fully set forth at length herein.

43. U-Haul AZ, owned, designed, manufactured, tested, inspected, marked, sold, rented, leased, distributed, and/or delivered and otherwise put the Subject Box Truck into the stream of commerce.

44. U-Haul AZ owed a duty to persons traveling on the roadways to design, manufacture, sell, rent or lease the Subject Box Truck in a condition that was safe for use and that eliminated unnecessary risk from the product's use.

45. U-Haul AZ knew or should have known at the time it designed, manufactured, sold, rented, leased or distributed the Subject Box Truck for rental by others that it was not safe for use and subjected persons traveling on the roadways to risk of injury when drivers of the Subject Box Truck were traveling on the roadway or attempting to switch or merge lanes of travel.

46. U-Haul AZ knew or should have known at the time it designed manufactured and sold, rented, leased or distributed the Subject Box Truck that it was not safe for use because it lacked necessary visual aids and signaling devices to ensure that the driver of the Subject Box Truck would be notified of the presence or other vehicles traveling parallel to and adjacent to the Subject Box truck.

47. The injuries sustained by Mateo Lagunas-Antunez were caused by and resulted from the negligent, careless and reckless acts and/or omissions of defendant U-Haul AZ, by and through its agents, servants, representatives, employees and/or subcontractors acting within the course and scope of their employment as follows:

a. renting or leasing the Subject Box Truck when defendant knew or should have known that the individual renting or leasing the Subject Box Truck did not have a valid driver's license and was not authorized or qualified to operate vehicles on public roadways;

b. failing to ask and/or determine whether the individual renting or leasing the Subject Box Truck and/or the intended driver of the Subject Box Truck had a valid drivers license that was suspended or revoked;

c. failing to take steps to determine whether defendant Hayes-Goode was capable of safely operating the Subject Box Truck;

d. failing to train and require its employees, agents and affiliated businesses on necessary precautions to prevent vehicles from being rented to individuals who were not licensed to operate such vehicles;

e. failing to train and require its employees, agents and affiliated businesses on the steps necessary to instruct and assist drivers on the proper adjustment of side mirrors;

f. failing to train and require its employees, agents and affiliated businesses to assist any and all single vehicle operators with side mirror adjustments to allow for maximum visibility;

g. designing, manufacturing and distributing or renting the Subject Box Truck without visual aids to enhance the operator's ability to detect vehicles traveling alongside the Subject Box Truck while traveling on roadways;

h. designing, manufacturing and distributing or renting the Subject Box Truck without visual or audible signals to alert a driver to the presence of other vehicles traveling on the roadway adjacent and in close proximity to the Subject Box Truck;

i. designing, manufacturing, distributing or renting the Subject Box Truck with inadequate lighting such that other drivers on the highway were not sufficiently notified of an operator's intention to switch or merge lanes of make a turn when traveling adjacent to the Subject Box Truck;

j. designing, manufacturing, distributing or renting the Subject Box Truck without any system for alerting driver that the Subject Box Truck was crossing into another lane while traveling on the roadway;

k. designing, manufacturing, distributing or renting the Subject Box Truck with mirrors that were difficult to operate and difficult to use and that offered no practical or feasible manner for a driver to adjust while traveling on the roadway to allow for a view of the passenger side of the Subject Box Truck;

l. designing, manufacturing, distributing or renting the Subject Box Truck with mirrors that were insufficient to accommodate a variety of drivers, body types and driving positions to be sure that the sides of the vehicle where fully visible to the driver;

m. failing to provide sufficient warnings and instructions and training to renters and drivers on how to safely operate the Subject Box Truck;

n.  failing to provide sufficient warnings, instruction and training to renters and drivers on how to operate the side mirrors on the Subject Box Truck;

o.  failing to provide warnings, instructions and training to its renters and drivers to bring to renter's or driver's attention that the Subject Box Truck completely lacked the usual safety and signaling devices that ordinary drivers typically rely upon in vehicles to alert the driver when there is another vehicle traveling immediately adjacent in a parallel lane.

48. As a direct and proximate result of the negligence of the defendant U-Haul AZ, Mateo Lagunas-Antunez sustained damages as more fully described above.

## COUNT V
## BREACH OF IMPLIED WARRANTY
## MATEO LAGUNAS-ANTUNEZ V. U-HAUL CO OF ARIZONA

49. Plaintiff restates and incorporates herein by reference paragraphs 1-48 as though more fully set forth at length.

50. U-Haul AZ impliedly warranted that the Subject Box Truck was not defective, unreasonably or inherently dangerous, that it was safe and suitable for ordinary and foreseeable use, that it was of merchantable quality, and that it was fit for its intended use and for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold.

51. In using the Subject Box Truck, defendant Hayes-Goode, other drivers on the roadway, and various U-Haul dealers and rental locations relied upon defendant U-Haul AZ's knowledge, skill and judgment and the implied warranty of merchantability made by the defendant U-Haul AZ.

52. The Subject Box Truck as designed, manufactured, and sold, rented or distributed by U-Haul AZ was defective, unreasonably and inherently dangerous, not safe or suitable for use on the roadways, not of merchantable quality, not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold, and did not comply with other implied warranties made by U-Haul AZ as prescribed by law or as the evidence may establish.

53. As a direct and proximate result of U-Haul AZ's breaches of implied warranties, the operator of the Subject Box Truck failed to detect and avoid a collision with the Antunez vehicle and otherwise switched lanes or merged when it was not safe to do so, ultimately resulting in serious and permanent injuries and damages to Mateo Lagunas-Antunez as detailed above.

54. As a further direct and proximate result of U-Haul AZ's breaches of implied warranties, Mateo Lagunas-Antunez was caused to suffer serious and permanent injuries; has suffered and will suffer in the future pain of the body and mind; has suffered disfigurement and scarring and associated humiliation or embarrassment; has suffered and will suffer inconvenience; has incurred and will incur in the future medical and related expenses; has been deprived of earnings and earning capacity; and has suffered and will suffer in the future other damages.

**COUNT VI - NEGLIGENCE**
**MATEO LAGUNAS-ANTUNEZ V. U-HAUL CO OF VIRGINIA**

55. Plaintiff restates and incorporates herein by reference paragraphs 1-54 as though more fully set forth at length herein.

56. U-Haul VA tested, inspected, marked, sold distributed, delivered and otherwise put the Subject Box Truck into the stream of commerce.

57. U-Haul VA owed a duty to persons traveling on the roadways to sell, rent of lease the Subject Box Truck in a condition that was safe for use and that eliminated unnecessary risk from the product's use.

58. U-Haul VA knew or should have known at the time it rented or distributed the Subject Box Truck for rental by others that it was not safe for use and subjected persons traveling on the roadways to risk of injury when drivers of the Subject Box Truck were traveling on the roadway or attempting to switch or merge lanes of travel.

59. U-Haul VA knew or should have known at the time it sold, rented, leased or distributed the Subject Box Truck that it was not safe for use because it lacked necessary visual aids and signaling devices to ensure that the driver of the Subject Box Truck would be notified of the presence or other vehicles traveling parallel to and adjacent to the Subject Box truck.

60. The injuries sustained by Mateo Lagunas-Antunez were caused by and resulted from the negligent, careless and reckless acts and/or omissions of defendant U-Haul VA, by and through its agents, servants, representatives, employees and/or subcontractors acting within the course and scope of their employment as follows:

   a. renting or leasing the Subject Box Truck when defendant knew or should have known that the individual renting or leasing the Subject Box Truck did not have a valid driver's license and was not authorized or qualified to operate vehicles on public roadways;

   b. failing to ask and/or determine whether the individual renting or leasing the Subject Box Truck and/or the intended driver of the Subject Box Truck had a valid drivers license that was suspended or revoked;

c. failing to take steps to determine whether defendant Hayes-Goode was capable of safely operating the Subject Box Truck;

d. failing to train and require its employees, agents and affiliated businesses on necessary precautions to prevent vehicles from being rented to individuals who were not licensed to operate such vehicles;

e. failing to train and require its employees, agents and affiliated businesses on the steps necessary to instruct and assist drivers on the proper adjustment of side mirrors;

f. failing to train and require its employees, agents and affiliated businesses to assist any and all single vehicle operators with side mirror adjustments to allow for maximum visibility;

g. distributing or renting the Subject Box Truck without visual aids to enhance the operator's ability to detect vehicles traveling alongside the Subject Box Truck while traveling on roadways;

h. distributing or renting the Subject Box Truck without visual or audible signals to alert a driver to the presence of other vehicles traveling on the roadway adjacent and in close proximity to the Subject Box Truck;

i. distributing or renting the Subject Box Truck with inadequate lighting such that other drivers on the highway were not sufficiently notified of an operator's intention to switch or merge lanes of make a turn when traveling adjacent to the Subject Box Truck;

j. distributing or renting the Subject Box Truck without any system for alerting driver that the Subject Box Truck was crossing into another lane while traveling on the roadway;

k. distributing or renting the Subject Box Truck with mirrors that were difficult to operate and difficult to use and that offered no practical or feasible manner for a driver to adjust while traveling on the roadway to allow for a view of the passenger side of the Subject Box Truck;

l. distributing or renting the Subject Box Truck with mirrors that were insufficient to accommodate a variety of drivers, body types and driving positions to be sure that the sides of the vehicle where fully visible to the driver;

m. failing to provide sufficient warnings and instructions and training to renters and drivers on how to safely operate the Subject Box Truck;

n. failing to provide sufficient warnings, instruction and training to renters and drivers on how to operate the side mirrors on the Subject Box Truck;

o. failing to provide warnings, instructions and training to its renters and drivers to bring to renter's or driver's attention that the Subject Box Truck completely lacked the usual safety and signaling devices that ordinary drivers typically rely upon in vehicles to alert the driver when there is another vehicle traveling immediately adjacent in a parallel lane.

61. As a direct and proximate result of the negligence of the defendant U-Haul VA, Mateo Lagunas-Antunez sustained damages as more fully described above.

## COUNT VII
## BREACH OF IMPLIED WARRANTY
## MATEO LAGUNAS-ANTUNEZ V. U-HAUL CO OF VIRGINIA

62. Plaintiff restates and incorporates herein by reference paragraphs 1-61 as though more fully set forth at length.

63. U-Haul VA impliedly warranted that the Subject Box Truck was not defective, unreasonably or inherently dangerous, that it was safe and suitable for ordinary and foreseeable use, that it was of merchantable quality, and that it was fit for its intended use and for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold.

64. In using the Subject Box Truck, defendant Hayes-Goode, other drivers on the roadway, and various U-Haul dealers and rental locations relied upon defendant U-Haul VA's knowledge, skill and judgment and the implied warranty of merchantability made by the defendant U-Haul VA.

65. The Subject Box Truck as sold, rented, leased or distributed by U-Haul VA was defective, unreasonably and inherently dangerous, not safe or suitable for use on the roadways, not of merchantable quality, not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold, and did not comply with other implied warranties made by U-Haul VA as prescribed by law or as the evidence may establish.

66. As a direct and proximate result of U-Haul VA's breaches of implied warranties, the operator of the Subject Box Truck failed to detect and avoid a collision with the Antunez vehicle and otherwise switched lanes or merged when it was not safe to do so, ultimately resulting in serious and permanent injuries and damages to Mateo Lagunas-Antunez.

67. As a further direct and proximate result of U-Haul VA's breaches of implied warranties, Mateo Lagunas-Antunez was caused to suffer serious and permanent injuries; has suffered and will suffer in the future pain of the body and mind; has suffered disfigurement and

scarring and associated humiliation or embarrassment; has suffered and will suffer inconvenience; has incurred and will incur in the future medical and related expenses; has been deprived of earnings and earning capacity; and has suffered and will suffer in the future other damages.

WHEREFORE, plaintiff Mateo Lagunas-Antunez demands judgment against all defendants on all counts in an amount in excess of $100,000 for damages, together with interest from July 25, 2022, and post judgment interest, costs, and such other relief as the Court deems appropriate.

**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.**

MATEO LAGUNAS-ANTUNEZ

By Counsel:

___/s/_____
William W. Tunner, Esq. (VSB #38358)
Paulo E. Franco, Jr. Esq. (VSB #30298)
Thompson McMullan, P.C.
100 Shockoe Slip
Richmond, VA 23219-4140
Phone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
pfranco@t-mlaw.com
*Counsel for Plaintiff*